Case 3:21-cv-00094   Document 451   Filed on 06/26/23 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
June 26, 2023
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

GALVESTON DIVISION

No. 3:21-cv-94

POLARIS ENGINEERING, INC.,
*PLAINTIFF*,

v.

TEXAS INTERNATIONAL TERMINALS, LTD., *ET AL.*,
*DEFENDANTS*,

*AND*

TEXAS INTERNATIONAL TERMINALS, LTD.,
*COUNTER-PLAINTIFF*,

v.

POLARIS ENGINEERING, INC.,
*COUNTER-DEFENDANT*,

*AND*

TEXAS INTERNATIONAL TERMINALS, LTD.,
*THIRD-PARTY PLAINTIFF*,

v.

WESTCHESTER FIRE INSURANCE COMPANY, *ET AL.*,
*THIRD-PARTY DEFENDANTS*.

# MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The defendant has moved to strike expert testimony provided by the plaintiff. Dkts. 266, 269. The court grants in part and denies in part Dkt. 266 and grants Dkt. 269.

## I. Background

The plaintiff, Polaris Engineering, seeks over $18 million in COVID-19 related change-order requests that it submitted to the defendant, Texas International Terminals ("TXIT"), after filing this lawsuit. Dkt. 266 at 1. To support its claimed damages for change-order requests, Polaris designated two experts, Timothy R. Overman and Timothy D. Rooney, to testify about the impact COVID-19 had on Polaris's project schedule and damages related to that delay. *Id.* at 1; Dkt. 269 at 1. TXIT now moves to strike Overman's and Rooney's expert testimony as it relates to COVID-19 and the change orders, arguing they are based on unreliable data and no methodology. Dkts. 266 at 1; 269 at 2.

## II. Legal Standard

To ensure expert testimony is reliable and relevant, courts act as "gatekeepers." *Pipiton v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). For an expert's testimony to be admissible, the proponent, Polaris, bears the

burden of proving (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact trier of fact understand the evidence or a fact in question, "(b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

## III. Analysis

### A. Overman

TXIT argues that Overman does not rely on sufficient facts or data and does not use a methodology to reach his conclusion that COVID-19 caused delays to or impacted Polaris's work on the project schedule. Dkt. 269 at 3. In response, Polaris argues that Overman provided an "extensive overview" of how COVID-19 delayed the construction. Dkt. 300 at 6. The court grants TXIT's motion to strike Overman's expert testimony.

In analyzing other delays to the project, Overman uses various methods, like Critical Path Method delay-analysis techniques, and divided delays into sequential review periods. Dkt. 270-1 ¶¶ 66, 68. In contrast, Overman "did not model COVID-19 schedule impacts in its delay analysis." Dkt. 270-1 ¶ 197. Instead, Overman simply states that construction was

disrupted by labor absenteeism and COVID-19 restrictions and procedures. *Id.* To support his conclusion, Overman does no more than cite the average number of people who missed work during certain periods, *id.* at 58 n. 160, and list Polaris's COVID-19 safety protocols (like social distancing and sanitizing), *id.* ¶ 195–196. He does not use any method or attempt to explain how or to what extent these protocols and labor absenteeism caused any delay at all, but simply concludes that COVID-19 "likely caused intermittent delays to Polaris's work." *Id.* ¶ 197 Accordingly, Polaris has not met its burden in proving that Overman's COVID-19 related opinion is the product of a reliable method.

### B. Rooney

TXIT argues Rooney relies on insufficient facts and applies no methodology in reaching the conclusion that COVID-19 caused delays in the project and that the requests are valid. Dkt. 266 at 4. In response, Polaris argues Rooney concluded Polaris's methodology in assessing COVID-19's impact on productivity and related costs was reasonable. Dkt. 300 at 6. The court grants in part and denies in part TXIT's motion to strike Rooney's testimony.

Rooney concludes—with support—that Polaris's methodology was "a reasonable method to allocate the costs" of a 60-day COVID-19 delay, but

does not appropriately connect that 60-day delay with COVID-19. Dkt. 267-1 ¶¶ 214–215. As Rooney uses a method and appropriate underlying facts to conclude Polaris's methodology of damage calculations is reasonable in the event COVID-19 caused the delays, those portions of his opinion are admissible. *Id.* ¶¶ 211–214, 216, 218–221, 233, 225–228, 230; Dkt. 267-2 ¶¶ 221–224, 226, 228–231, 233, 235–238, 240.

But Rooney does not use methodology or provide facts to support that COVID-19 caused a 20 percent or 60-day delay. Indeed, Rooney simply concludes that COVID-19 "*would* have had a significant schedule impact" but admits that he has "not identified documentation to support this delay." Dkt. 267-1 ¶¶ 214, 215 (emphasis added). Further, in his supplemental report, Rooney refers to Overman's report for a delay assessment rather than conduct analysis himself, stating again that COVID-19 "*would* have had a significant schedule impact, however, [he] has not assessed the claimed delay." Dkt. 267-2 ¶ 225 (emphasis added).

Rooney's ultimate conclusion that the COVID-19 change orders are valid is unsupported because it necessarily relies on a conclusion that the claimed delay was valid—and Rooney does not attempt to make such a conclusion, much less support it with facts and methodology. Dkts. 267-1 ¶ 217, 224, 231; 267-2 ¶¶ 227, 234, 241. Accordingly, Rooney's opinion that the

change orders are valid is stricken. Dkts. 267-1 ¶¶ 217, 224, 231; 267-2 ¶¶ 227, 234, 241. To the extent Rooney makes assertions that the delay was caused by COVID-19, that portion of the opinion is also barred for lack of underlying facts and methodology. Dkts. 267-1 ¶¶ 215, 222, 229; 267-2 ¶¶ 225, 232, 239.

### C. Premature Motions

Polaris argues TXIT's motions to strike are premature because as of filing, neither expert had been deposed and discovery was still ongoing. Dkt. 300 at 3. But Overman and Rooney evaluated COVID-19 related change-order requests prepared by Polaris regarding Polaris delays, meaning any relevant information was in Polaris's possession without the need for discovery or depositions. Dkt. 313 at 5. Thus, Polaris's argument that this decision is premature without more discovery and Overman's and Rooney's depositions is unconvincing.[1]

---

[1] The case law Polaris cites to support this argument is also unconvincing. Dkt. 300 at 3. All of the cited cases were written by Judge Fitzwater, who prefers that parties wait to file motions like this one, but specifically states that this is his "preference" and that he does not suggest that such a motion cannot be filed earlier. *Galvez v. KLLM Transp. Services LLC*, No. 3:20-CV-0238-D, 2021 WL 1966814, at *1-2 (N.D. Tex. May 17, 2021); *Klein v. Fed. Ins. Co.*, 2014 WL 6885973, at *1 (N.D. Tex. Dec. 8, 2014); *Stephens v. FAF, Inc.*, No. PE:18-CV-6-DC-DF, 2018 WL 7070836, at *1 (W.D. Tex. Nov. 20, 2018).

\*   \*   \*

The court grants in part and denies in part TXIT's motion to strike the COVID-19 related portions of Rooney's report, Dkt. 266, and grants the motion to strike the COVID-19 related portions of Overman's report, Dkt. 269.

Signed on Galveston Island this 26th day of June, 2023.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE