United States District Court
Southern District of Texas
**ENTERED**
October 26, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| POLARIS ENGINEERING, INC., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:21-cv-00094 |
| | § | |
| TEXAS INTERNATIONAL | § | |
| TERMINALS, LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

On August 23, 2023, I entered an Opinion and Order ("Privilege Order") granting a motion to compel (*see* Dkt. 377) filed by Plaintiff Polaris Engineering, Inc. ("Polaris"). *See* Dkt. 472. Specifically, I held that the following documents are not covered by the attorney–client privilege: (1) communications between Defendant Texas International Terminals, Ltd. ("TXIT"), TXIT's counsel Andrews Myers, P.C. ("Andrews Myers"), and non-party GCC Supply & Trading, LLC ("GCC"); and (2) three documents between TXIT, Andrews Myers, and TXIT's former employee Jereme Crouthamel ("Crouthamel"). The Privilege Order turned, in large part, on TXIT's failure to "establish by testimony or affidavit a prima facie case for the privilege." *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 804 (Tex. 2017) (quotation omitted).[1] When I ultimately held TXIT and its counsel to the natural

---

[1] In a nutshell, TXIT and its counsel assumed that I would take all their assertions as true, as if a privilege dispute functioned like a motion to dismiss, and that I either knew all the relevant parties listed on the documents at issue, or would scour the hundreds of docket entries in this three-year-old case to figure it out. For example, GCC's Managing Director John Mafrige acknowledges in a supplementary affidavit executed contemporaneously with a motion for reconsideration of the Privilege Order that he "previously failed to identify the role and relationship of the some of the individuals discussed in [his] affidavit, the privilege log, and TXIT['s] response to [Polaris's] motion to compel on the belief, perhaps mistaken, that such information could be gleaned from other materials." Dkt. 480-11 at 4–5. To "glean" is to "to gather slowly and laboriously, bit by bit." *Glean*, DICTIONARY.COM, https://www.dictionary.com/browse/glean (last visited Oct. 24, 2023).

consequence of treating the outcome of this privilege dispute like a foregone conclusion by ordering the production of the documents at issue over TXIT's assertion of privilege, TXIT finally decided to take its burden to establish the existence of the attorney–client privilege seriously.

On September 6, 2023, TXIT and GCC filed Objections to my Privilege Order (Dkt. 479), *and* a Motion for Reconsideration and Motion for Leave to Supplement the Record Evidence ("Motion for Reconsideration") (Dkt. 480). Attached to each of these filings are 14 *new* exhibits in support of their privilege assertions, including four affidavits that were executed *after* the Privilege Order was entered. On September 13, 2023, Polaris filed a Motion to Strike "New" Evidence Submitted in Support of TXIT's Appeal [Dkt. 479] and Motion for Reconsideration [Dkt. 480] and to Dismiss the Motion for Reconsideration [Dkt. 480] for Lack of Jurisdiction ("Motion to Strike"). Dkt. 483. On September 14, 2023, I held a hearing on TXIT and GCC's Motion for Reconsideration. That same day, Judge Jeffrey V. Brown referred Polaris's Motion to Strike to me. *See* Dkt. 485. I instructed the parties to fully brief the Motion for Reconsideration and the Motion to Strike, and I heard arguments on both motions on October 12, 2023. Having reviewed the briefing, the record, and the applicable law, I **GRANT** TXIT and GCC's Motion for Reconsideration (Dkt. 480); **DENY** Polaris's Motion to Strike (Dkt. 483); and **GRANT** in part and **DENY** in part Polaris's Motion to Compel (Dkt. 377).

## MAGISTRATE JUDGE JURISDICTION

As an initial matter, I must first address my jurisdiction to rule on TXIT and GCC's Motion for Reconsideration. Polaris argues that "when a party files a Rule 72 appeal of a magistrate judge's decision, such filing divests the magistrate [judge] of any further jurisdiction and therefore renders moot any motion for

---

"Judges are not like pigs, hunting for truffles buried in briefs." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (quotation omitted). If "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," *id.*, then I certainly have no such obligation in resolving a discovery dispute.

reconsideration." Dkt. 483 at 5. Thus, Polaris moves to "dismiss TXIT's Motion for Reconsideration in its entirety because its [Rule 72] appeal divested the magistrate [judge] of jurisdiction to reconsider [his] ruling." *Id.* at 6. TXIT and GCC respond that my "jurisdiction should not be in question" because "Judge Brown referred [Polaris's Motion to Strike] to [me]." Dkt. 517 at 7; *see also* Dkt. 485 (referring Polaris's Motion to Strike). I agree with TXIT and GCC.

I firmly believe I have the authority to reconsider my Privilege Order even though Rule 72 objections have been filed. It makes no logical sense to prohibit a magistrate judge from reconsidering a non-dispositive order. Our justice system should encourage all efforts by the judiciary to reach the correct result. To that end, both district court and magistrate judges should be afforded the opportunity to reconsider non-dispositive orders. *See Benevis, LLC v. Mauze & Bagby, PLLC*, No. 5:12-cv-36, 2015 WL 12763537, at *2 (S.D. Tex. Dec. 14, 2015) ("Because both parties filed motions for clarification, the undersigned [magistrate judge] concludes that despite the pending Rule 72(a) motion, he holds jurisdiction to reconsider his discovery Order."); *Summa v. Hofstra Univ.*, No. 07-cv-3307, 2008 WL 11449288, at *1 (E.D.N.Y. Dec. 24, 2008) ("[A] Rule 72(a) appeal does not divest a magistrate judge of the power to decide a motion for reconsideration.").

Although I feel strongly that a Rule 72(a) appeal does not preclude me from considering a motion for reconsideration on a non-dispositive order, that is really of no moment in the present case. By referring Polaris's Motion to Strike to me, it is clear that Judge Brown intends for me to take the first crack at deciding whether I should entertain the Motion for Reconsideration. *See Young v. Glanz*, No. 13-cv-00315, 2018 WL 1588026, at *4 n.5 (N.D. Okla. Mar. 31, 2018) ("Even assuming a Rule 72(a) motion vitiates a magistrate judge's authority to amend a non-dispositive order . . . that would not apply here because the district judge expressed his intent for the magistrate judge to reconsider the issues prior to his review." (quotation omitted)).

Thus, I am satisfied that I have jurisdiction, and I **DENY** Polaris's Motion to Strike to the extent it asks me to strike or dismiss the Motion for Reconsideration.[2]

### RULE 54(b) GOVERNS THE MOTION FOR RECONSIDERATION

TXIT and GCC move for reconsideration of the Privilege Order and "for leave to supplement the record evidence to further substantiate the existence of attorney-client privileges." Dkt. 480 at 1. They do not specify in their Motion for Reconsideration the procedural basis for their request. In Polaris's Motion to Strike, Polaris contends that Rule 60[3] governs the Motion for Reconsideration. Without wasting too much time on this issue, Polaris is wrong.

Rule 54(b) provides that

any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at

---

[2] While a motion to dismiss a claim for relief in a pleading is a dispositive matter for which I would enter a memorandum and recommendation (as opposed to an order), this privilege dispute is a non-dispositive, pretrial matter that is within my jurisdiction "to hear and determine." 28 U.S.C. § 636(b)(1)(A).

[3] Rule 60 provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

FED. R. CIV. P. 60(b).

> any time before the entry of a judgment adjudicating all the claims
> and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b). The Fifth Circuit has made clear that "Rule 54(b) allows parties to seek reconsideration of interlocutory orders." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). "It is well-established that a discovery ruling in civil cases . . . is 'a clearly interlocutory decision[.]' . . . A court order to produce documents claimed to be covered by the attorney-client privilege is not [a final decision of the district court]." *In re Royce Homes LP*, 466 B.R. 81, 89 (S.D. Tex. 2012) (quoting *FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*, 498 U.S. 269, 276 (1991)) (holding that an "order granting [a] motion to compel production of documents over privilege assertions at most resolves a discrete issue, not a discrete dispute" and is thus interlocutory). Because the Privilege Order is interlocutory, Rule 54(b) applies.

Polaris's only retort to *Austin* is that it did not "relate[] to relief from a non-dispositive order granting a motion to compel production of documents." Dkt. 521 at 2. But district courts within the Fifth Circuit and this district have relied on *Austin* in deciding motions to reconsider non-dispositive orders granting motions to compel production of documents over privilege assertions. *See Pedersen v. Kinder Morgan, Inc.*, No. 4:21-cv-3590, 2023 WL 6441948, at *1, 3 (S.D. Tex. Sept. 29, 2023) (applying Rule 54(b) to a motion to reconsider and finding, upon reconsideration, that the documents at issue were protected by attorney–client privilege on the basis of a supplemental affidavit that "clarifie[d] the deficiencies in the record"); *Tonti Mgmt. Co. v. Soggy Doggie, LLC*, No. 19-cv-13134, 2020 WL 9172035, at *5 (E.D. La. Aug. 13, 2020) (applying Rule 54(b) to a motion to reconsider a ruling on a motion to compel documents); *Muslow v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. 19-cv-11793, 2020 WL 4471160, at *2 (E.D. La. Aug. 4, 2020) (same). Thus, I too will apply Rule 54(b) in deciding TXIT and GCC's Motion for Reconsideration.

"Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336 (quotation omitted). But even after *Austin*, courts have continued to "evaluate Rule 54(b) motions to reconsider under the same standards as Rule 59(e) motions to alter or amend a final judgment," which require a movant to show, in relevant part, "newly discovered or previously unavailable evidence." *Tonti Mgmt. Co.*, 2020 WL 9172035, at *6. Yet, the Fifth Circuit has held that a district court abuses its discretion in relying "on the heightened standard of Rule 59(e) to deny [a] motion for reconsideration" of an interlocutory order. *Austin*, 864 F.3d at 337. In applying "the more flexible Rule 54(b)," a district court must evaluate motions for reconsideration of interlocutory orders "with a preference toward resolving the [dispute] on the merits and avoiding any [ruling] based on a technicality." *Id.* As such, courts should not be "constrained by whether the [evidence submitted on reconsideration] previously existed." *Id.* In other words, arguments that *could* have been made and evidence that *could* have been introduced before may nevertheless be considered under Rule 54(b) *if* doing so furthers "the interests of justice." *Id.* at 338.

## MOTION TO STRIKE "NEW" EVIDENCE

Before analyzing the Motion for Reconsideration under Rule 54(b), I must first address the portion of Polaris's Motion to Strike asking me to not consider the 14 "new" exhibits that TXIT and GCC offer in support of their privilege assertions.

To the extent Polaris's Motion to Strike rests upon application of Rule 60, I do not consider those arguments. As established above, the relevant legal standard is the much more flexible standard of Rule 54(b). Yet, Polaris argues in a footnote to its reply that "[e]ven under Rule 54(b), TXIT and GCC would not be permitted to 'rehash rejected arguments or introduce new arguments,' which is all they do here." Dkt. 521 at 2 n.2 (quoting *In re Anadarko Petro. Corp. Sec. Litig.*, No. 4:20-cv-00576, 2022 WL 950892, at *3 (S.D. Tex. June 30, 2023)). That is generally a

true statement. As explained below, to the extent TXIT and GCC seek reconsideration of the Privilege Order because they believe that "[t]he record as developed [at the time I issued the Privilege Order] establishe[d] a *prima facie* case of attorney–client privilege," Dkt. 480 at 5, that request is denied. My initial decision was correct based on the record before me at that instant in time. But TXIT and GCC introduce new *evidence* that changes the analysis. Rule 54(b) permits me to consider this evidence if doing so furthers "the interests of justice." *Austin*, 864 F.3d at 338. One of the factors the Fifth Circuit considered in weighing "the interests of justice" in *Austin* was the "lack of prejudice" to the party opposing reconsideration. *Id.* Accordingly, I will consider whether and to what extent Polaris would be prejudiced if I grant reconsideration.

Nine of the 14 exhibits that TXIT and GCC submit in support of their Motion for Reconsideration are discovery exchanges between *Polaris's counsel* and Andrews Myers (either on behalf of TXIT and/or GCC). *See* Dkts. 480-1 through 480-9. There is no prejudice to Polaris in considering these exhibits because Polaris had access to them prior to filing its motion to compel. *See Austin*, 864 F.3d at 338 (observing a "lack of prejudice" to the original movant if, on reconsideration, the court considered an expert report that could have been submitted earlier because the movant had access to the report all along). Nor is Polaris prejudiced by the inclusion of a transcript of a hearing at which Polaris's counsel was present. *See* Dkt. 480-14. Of course, these 10 exhibits—the nine discovery exchanges and the hearing transcript—are nothing compared to the main event. Polaris's real beef is with four supplementary affidavits executed *after* the Privilege Order issued, two of which—the affidavits of TXIT and GCC's owner Todd Sullivan ("Sullivan"), and GCC's Manager Director John Mafrige ("Mafrige")—appear to contradict the affiants' own deposition testimony. *See* Dkts. 480-10 through 480-13.

Polaris is unquestionably prejudiced if I consider these supplementary affidavits. Polaris filed its initial Motion to Compel based on Sullivan and Mafrige's deposition testimony, and Polaris *won* that motion because TXIT failed to carry its

burden. For the reasons explained in the next section, the Privilege Order was correct when issued based on the record before me at that time. Had Sullivan and Mafrige been more forthcoming or clear in their depositions, or provided the information in their supplementary affidavits the first time, Polaris would have wasted considerably less time and resources (as would this Court). *See Kmak v. Am. Century Cos.*, 873 F.3d 1030, 1035 (8th Cir. 2017) (observing, in the Rule 16 context, that "undue delay" and being forced "to re-litigate [a] dispute on new bases" was prejudicial (quotation omitted)). That said, any prejudice to Polaris is outweighed by the extraordinary prejudice of invading the attorney–client privilege. Thus, I will consider these affidavits to the extent they "clarif[y] the deficiencies in the record." *Pedersen*, 2023 WL 6441948, at *3 (granting a motion for reconsideration of a motion to compel production of documents over privilege assertions on the basis of a supplemental affidavit executed contemporaneously with the motion for reconsideration). What matters is that the privilege issue is determined "on the merits," not "on the basis of mere technicalities." *Austin*, 864 F.3d at 337–38 (quotation omitted). For this reason, I **DENY** Polaris's Motion to Strike the new evidence attached to the Motion for Reconsideration. I will discuss the challenged affidavits in greater detail below.

## ANALYSIS

### A.    THE PRIVILEGE ORDER WAS CORRECT WHEN ISSUED

TXIT and GCC first "ask the Court to reconsider its finding *on the record as developed* because the Court did not analyze the record evidence on Texas'[s] low threshold of *prima facie* proof: minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." Dkt. 480 at 4. I decline. In doing so, I want to hammer home a few important points. First, TXIT erroneously focuses on "minimum quantum" to the exclusion of "proof." The attorney–client privilege is indeed sacrosanct, but it was always TXIT's burden to establish the privilege "***by testimony or affidavit***." Dkt. 472 at 4 (quoting *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d at 804). Moreover, it was never enough for TXIT

to establish only that GCC had an attorney–client relationship with Andrews Myers. TXIT also had to establish that GCC was TXIT's joint or co-client, or that GCC was TXIT's representative.[4] *See* Dkt. 472 at 6 n.1 ("If TXIT cannot establish that GCC was its representative and/or joint client, then GCC's inclusion on the communications at issue waives TXIT's privilege."). *And* TXIT had to establish that the "documents are privileged" and "that a party listed on the privilege log is an authorized person under the rule governing the privilege." *Id.* at 4 (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 225 (Tex. 2004)). Assuming TXIT carried its burden as to GCC's attorney–client relationship with Andrews Myers, it unquestionably failed to establish that GCC is TXIT's joint or co-client (or representative). And it failed to establish *anything* regarding the documents on TXIT/GCC's privilege log, which Mafrige failed to even mention in his affidavit ("Mafrige Affidavit") attached to TXIT's response to Polaris's Motion to Compel. *See* Dkt. 402-3. TXIT and GCC cite seven cases they contend "found the *prima facie* standard met with far less details than what was provided here." Dkt. 480 at 6. I will address each one to demonstrate why TXIT and GCC are incorrect.

In *University of Texas System v. Franklin Center for Government and Public Integrity*, the Texas Supreme Court found that a challenged affidavit established the privilege where it "discusse[d] specific numbered documents in the privilege log, including names of individuals involved and the purpose of those documents." No. 21-0534, 2023 WL 4278243, at *8 n.11 (Tex. June 30, 2023). In

---

[4] Clients of a common lawyer (or law firm) do not share a privilege simply because they have the same lawyer. Even "clients of the same lawyer who share a common interest are not necessarily co-clients. Whether individuals have jointly consulted a lawyer or have merely entered concurrent but separate representations is determined by the understanding of the parties and the lawyer in light of the circumstances." Restatement (Third) of the Law Governing Lawyers § 75 cmt. c (2000). Thus, I consider the question of GCC's attorney–client relationship with Andrews Myers to be something of a red herring. It is but the first of three hurdles that TXIT had to overcome to establish the privilege. Because GCC is a separate legal entity, TXIT must establish: (1) that GCC had an attorney–client relationship with Andrews Myers; (2) that GCC is TXIT's joint or co-client with Andrews Myers (or that GCC was TXIT's representative); and (3) that the documents at issue are privileged.

contrast, the Mafrige Affidavit does not even reference the TXIT/GCC privilege log, much less discuss specific documents, or identify the individuals on those documents. *Franklin Center* only reaffirms how far short TXIT fell of carrying its burden the first go around.

TXIT and GCC next cite *Homeland Insurance Co. of New York v. Clinical Pathology Laboratories, Inc.*, No. 1:20-cv-783, 2022 WL 17255798, at *4 (W.D. Tex. Nov. 28, 2022), for the proposition that "an affidavit stating that 'from that point forward' everything was done at the direction of outside counsel and that she 'understood and expected' those communications 'to remain confidential'" was "sufficient." Dkt. 480 at 6. But TXIT and GCC overlook that the Mafrige Affidavit fails to make even these conclusory statements, as it simply does not address the communications at issue beyond saying that GCC "conducted itself accordingly," whatever that means. Dkt. 402-3 at 3. Moreover, *Homeland* dealt with the somewhat standard situation of establishing "that communications between the insured, the insurance broker, and the insured's lawyers were privileged." 643 F. Supp. 3d at 683. That is a much different situation than here, where GCC put TXIT in default of their agreement—an agreement that explicitly states "Neither . . . is authorized to take any action in any way whatsoever for or on behalf of the other." Dkt. 404 at 8. Yet, TXIT inexplicably maintained that GCC was its representative and that it shared a common interest with GCC, though it never bothered to articulate what that common interest is.[5]

Next, TXIT and GCC cite *In re Hyde Park Baptist Church*, No. 03-23-00049-cv, 2023 WL 5353367, at *5 (Tex. App.—Austin Aug. 22, 2023, no pet. h.), for this proposition: "an affidavit stating that documents at issue were made for the purpose of facilitating the rendition of legal services relating to a specific

---

[5] Indeed, the word "interest" appears only once in TXIT's briefing on Polaris's Motion to Compel, and it is not used to explain any common legal interest shared by TXIT and GCC. *See* Dkt. 402 at 1 (quoting *Upjohn v. United States*, 449 U.S. 383, 389 (1981), for the proposition that the attorney–client privilege "promote[s] broader public interests in the observance of law and administration of justice").

situation and in anticipation of litigation relating to that situation and were not intended to be disclosed to third parties" is "sufficient." Dkt. 480 at 7. TXIT and GCC again conveniently overlook that the Mafrige Affidavit does not even address the documents at issue. Unlike the Mafrige Affidavit, the affidavit in *In re Hyde Park Baptist Church* at least identified *who* the communications at issue were between. *See* 2023 WL 5355367, at *5 ("In her affidavit, Osborn stated that the information in her attorney file requested by the Burciagas 'reflect[s] communications between: 1.) the client or its representatives and myself in the capacity as counsel for the Church; 2.) the client, the client's representatives, and myself and a lawyer also representing Hyde Park Baptist Church; or 3.) among lawyers representing the same client.'"). Two of the next four cases that TXIT and GCC cite are inapposite for the same reason—the affidavits in those cases at least referenced the documents at issue and established the affiant's familiarity with the allegedly privileged documents. *See Shell W. E & P, Inc. v. Oliver*, 751 S.W.2d 195, 196 (Tex. App.—Dallas 1988, no writ) (finding affidavit sufficient to establish the privilege where it "recited that the affiant had read all the documents at issue" and that all were either written by a lawyer to a client, or otherwise specified why the privilege should apply); *In re Monsanto Co.*, 998 S.W.2d 917, 927 (Tex. App.—Waco 1999, no pet.) (attorney's affidavit was sufficient where the privilege log was attached as an exhibit to his affidavit, and the affidavit asserted "that the documents reflect (1) attorney-client communications and (2) work papers reflecting attorney mental processes developed in rendering legal services"). The Mafrige Affidavit simply does not come close to these examples.

Similarly, in *In re Toyota Motor Corp.*, the affidavit "verifie[d] that the descriptions provided for each of the documents on the privilege log are truthful and accurate." 94 S.W.3d 819, 822 (Tex. App.—San Antonio 2002, no pet.). *Toyota*, however, did not turn on the sufficiency of an affidavit in establishing prima facie proof of privilege. Rather, *Toyota* was about whether the court abused its discretion after reviewing the challenged documents in camera. Thus, *Toyota* is

procedurally inapposite to this case. *IMC Fertilizer, Inc. v. O'Neill* is also inapposite because that decision turned again, not on the sufficiency of an affidavit, but on the district court's error in holding that "investigations are not communications made by a client seeking legal advice from a lawyer." 846 S.W.2d 590, 591 (Tex. App.—Houston [14th Dist.] 1993, no writ).

\* \* \*

In response to Polaris's Motion to Compel, TXIT provided no testimony or affidavit even referencing the documents on the privilege log, much less establishing that any of the documents on the privilege log are privileged. TXIT failed to identify the people on the allegedly privileged communications. TXIT did not articulate what common legal interest it shares with GCC, nor did it establish through competent evidence that GCC is TXIT's representative. For all these reasons, I decline to reconsider the Privilege Order on the record as developed. The Privilege Order was correct when it was issued. Nonetheless, TXIT and GCC's supplemental evidence in support of their Motion for Reconsideration changes the analysis, for the reasons explained below.

## B.   THE SUPPLEMENTARY EVIDENCE CHANGES THE ANALYSIS

### 1.   *GCC Is Andrews Myers's Client*

The following is an apt description by a Texas appellate court of how to ascertain the existence of an attorney–client relationship:

> The attorney-client relationship is a contractual relationship whereby an attorney agrees to render professional services for a client. The relationship may be expressly created by contract, or it may be implied from the actions of the parties. ***For the relationship to be established, the parties must explicitly or by their conduct manifest an intention to create it.*** To determine whether there was a meeting of the minds, we use an ***objective standard*** examining what the parties said and did and do not look at their subjective states of mind.

*Sutton v. Est. of McCormick*, 47 S.W.3d 179, 182 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (emphasis added) (cleaned up). Under this objective standard, the supplementary affidavit of Ben Harrison ("Harrison") easily

establishes that GCC was a client of Andrews Myers as far back as October 2020.[6] Specifically, Harrison's supplementary affidavit confirms that when he referred to Tim Ross ("Ross") of Andrews Myers as "our primary outside council [sic]" in an October 29, 2020 email to a third-party (Dkt. 402-4 at 2 (the "Harrison-Alcorta email")), Harrison meant that Ross was *GCC's* outside counsel. Dkt. 480-13 at 1. More importantly, in the documents that TXIT and GCC produced to me for in camera review, there is an email from Ross to Harrison that same day in which Ross responded to Harrison and did not correct Harrison's statement that Ross and Andrews Myers were GCC's outside counsel.[7] These three documents together are objective evidence of GCC's and Andrews Myers's intent to create an attorney–client relationship with one another in October 2020.

Additionally, a March 27, 2021 email from Mafrige to Robert Haugen and Ross, with a subject line "Privileged & Confidential"—in which Mafrige requests legal advice[8] from Ross, and forwards to Ross internal correspondence between

---

[6] TXIT and GCC note that "the Court's docket expressly identifies Andrews Myers as counsel for GCC." Dkt. 480 at 11. True as that may be, Andrews Myers did not appear for GCC in this litigation until 2022, and Polaris seeks "any and all communications between TXIT, its attorneys, and non-party GCC from January 2018 to present as it relates to Polaris, this lawsuit, and the Facility." Dkt. 377 at 5. Thus, TXIT was required to establish that GCC had an attorney–client relationship with Andrews Myers throughout that time period. That said, based on TXIT/GCC's privilege log, from 2018 until October 2020, there do not appear to be any documents responsive to Polaris's request.

[7] This document is not Bates stamped, so I have no way to refer to it other than its title: "2020.10.29_GCCB_REV_0022009_RE GCC Bunkers – MEH Crude Samples – Inventory Check." Why this document was submitted to me for in camera review is beyond me because it does not reflect anyone seeking or giving legal advice, and is thus not privileged or confidential.

[8] The legal advice requested does not pertain to third-party discovery, which at this point, is the only argument Polaris has as to why there is no attorney–client relationship between GCC and Andrews Myers. *See* Dkt. 497 at 20 n.27 ("Polaris does not dispute that Andrews Myers represented GCC with respect to third-party discovery. Polaris does dispute any alleged representation of GCC by Andrews Myers beyond third-party discovery consistent with the prior deposition testimony of Mafrige."). I have already explained why I do not consider the Mafrige Affidavit to be a sham. *See* Dkt. 472 at 6–9. Documents like this—created years before this privilege dispute—further confirm that the Mafrige Affidavit is not a sham.

GCC and its in-house counsel Scott Mixon—is objective evidence that GCC intended its communications with Andrews Myers to remain confidential.[9] Thus, I find that TXIT and GCC have produced "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact [regarding GCC's attorney–client relationship with Andrews Myers] is true." *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d at 804.

### 2. *Mafrige Is TXIT's Client's Representative*

A "client's representative," as defined by the Texas Rules of Evidence, is:

> (A) a person who has authority to obtain professional legal services for the client or to act for the client on the legal advice rendered; or

> (B) any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client.

TEX. R. EVID. 503(a)(2).

In its response to Polaris's Motion to Compel, TXIT asserted that "GCC employees served as corporate representatives of TXIT in seeking and facilitating legal advice concerning Polaris and the Facility." Dkt. 402 at 3. TXIT did not, however, identify any GCC employees except Mafrige who allegedly served in this role. In Sullivan's supplementary affidavit, he also does not identify any GCC employee other than Mafrige as TXIT's representative. *See* Dkt. 480-10 at 2 ("I chose Mr. Mafrige to be a TXIT client representative"; "I asked GCC's John Mafrige to attend and participate because I wanted him to be both a representative of GCC and TXIT in seeking legal advice regarding recommended next steps for both entities"; and "John Mafrige has acted as a representative of both TXIT and GCC in their communications with TXIT's and GCC's in-house counsel and outside counsel, Andrews Myers."). In support of his contention that Mafrige has acted as TXIT's representative, Sullivan notes that Mafrige has procured an expert report

---

[9] This document is also not Bates stamped. Its title is "2021.03.17_GCCB_REV_4402165 _Re Privileged & Confidential."

for TXIT's use during this litigation and approved invoices on behalf of TXIT in this litigation, and has "served as TXIT's corporate representative in numerous depositions." *Id.* at 3.

Sullivan's supplementary affidavit is enough to establish the rational inference that Mafrige was TXIT's representative. Polaris does not dispute the underlying factual context contained in Sullivan's supplementary affidavit. Rather, Polaris asks me to either (1) judicially estop "TXIT from asserting positions contrary to those taken by Mafrige and Sullivan [in their] deposition[s]"; or (2) find that "TXIT waived the attorney–client privilege when Mafrige also served as the Managing Director [of] GCC—an entity directly adverse to TXIT." Dkt. 497 at 29, 31. I will address each of these arguments in turn.

### a.   Judicial Estoppel Does Not Apply

Judicial estoppel—a doctrine most often employed in the bankruptcy context "to deter dishonest debtors" from failing "to fully and honestly disclose all their assets"—"prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011). Three elements must be present before a court will apply judicial estoppel: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Id.* at 574. "Because the doctrine is intended to protect the judicial system, *rather than the litigants*, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). In other words, it is *the court's* reliance on the challenged claim that matters. For this reason, "courts have identified at least two limitations on the application of the doctrine: (1) it may be applied only where the position of the party to be estopped is *clearly inconsistent* with its previous one; *and* (2) that party must have convinced the court to accept that previous position." *Id.* at 206 (emphasis added).

I have already explained why the Mafrige Affidavit was "not *so* inconsistent with his deposition testimony as to make it a sham affidavit." Dkt. 472 at 8 n.5. But even assuming (without deciding) that Mafrige and Sullivan's supplementary affidavits are clearly inconsistent with their deposition testimony,[10] Polaris fails to explain how that affects the Court. The Court has thus far not relied on either Mafrige or Sullivan's deposition testimony regarding TXIT and/or GCC's purported attorney–client relationship with Andrews Myers in making decisions in this case. For this reason, judicial estoppel is inapplicable.

### b.   TXIT and GCC Are Not Adverse

Polaris next argues that "TXIT cannot conveniently claim that Mafrige received any allegedly privileged communications or work product solely as a corporate representative when Mafrige also served as the Managing Director of GCC—an adversary." Dkt. 497 at 32. Polaris's contention that GCC is "an adversary" of TXIT is based solely on the fact that "TXIT by its own admission defaulted under the terms of [its] Tolling Agreement [with GCC]." *Id.* at 11. This argument overlooks two very important points. First, the Sullivan brothers own

---

[10] Polaris makes much of the fact that when asked whether Mafrige had a "'role with [TXIT],'" Sullivan responded: "'None.'" Dkt. 497 at 19 (quoting Dkt. 497-3 at 24). Yet, Sullivan testified immediately before and after that exchange that Mafrige was appearing at Sullivan's deposition "as a representative of TXIT." *See* Dk. 497-3 at 24. Thus, Sullivan's affidavit is both consistent and inconsistent with his deposition testimony. In other words, Sullivan was an evasive deponent. The remedy for Sullivan's evasive and unreliable deposition testimony is vigorous cross-examination at trial, not invasion of the attorney–client privilege, which is established through other proof. For that reason, the tiebreaker for me has been the fact that documents created years before this privilege dispute support Sullivan's affidavit, meaning it is not a sham. *See, e.g.*, *supra* n.8 and accompany text; 2020.10.09_GCCB_REV_015722_Re Polaris Eng'g, Inc. v. Tex. Int'l Terminals, Ltd. (litigation strategy discussion between GCC's John Mafrige, TXIT's Bill Bevers, TXIT and GCC's shared in-house counsel Scott Mixon, and attorneys from Andrews Myers); 2021.04.03_GCCB_REV_2615331_RE Trying to Make Sense of Polaris's Calculations – Privileged & Confidential (document prepared for Andrews Myers by Robert Haugen—an in-house engineer for both TXIT and GCC—during the course of litigation that included Sullivan and GCC's President, Martin Powers); 2021.03.24_GCCB_REV_4247469_Fwd Advisian invoice 267499_please approve (GCC's John Mafrige corresponding with Tim Ross of Andrews Myers regarding approval of invoices on behalf of TXIT).

both companies, and thus own *both* TXIT's obligation to GCC and, conversely, GCC's claim upon TXIT.[11] *See* Dkt. 480-10 at 1. For the Sullivan brothers, it is a zero-sum game. Second, and more importantly, Sullivan testified that "T[X]IT accepted those claims [from GCC] as we found it to be more efficient to . . . have this dispute on – on one front with you guys directly as TXIT represented by Andrews and Myers." Dkt. 497 at 7 (quoting Dkt. 404-2 at 8). In other words, TXIT acknowledges and *accepts* its liability to GCC. *See* Dkt. 404-2 at 8 ("It is clear, therefore, I'll say it's oral, that TXIT is liable to GCC for its claim, for its loss, for GCC losses."). TXIT is prosecuting GCC's claims and will give 90 percent of any recovery "less the attorneys' fees and costs that TXIT has shouldered in advancing GCC's claims" to GCC. Dkt. 480-10 at 4.

"It is not tenable for a party to successfully argue [attorney–client privilege or] work product waiver simply by alleging implausible facts about adversarial positions between other parties." *In re Sanchez Energy Corp.*, No. 19-34508, 2022 WL 17586713, at *7 n.7 (Bankr. S.D. Tex. Dec. 12, 2022). Determinations about waiver must be "grounded in the realities of [each] case." *Id.* Parties are not adverse when, like TXIT and GCC, they agree about their liabilities and obligations to one another. In *Sanchez*, the court found adversity because two parties would have wanted a third "to accept an artificially low settlement." *Id.* at *7. Here, TXIT and GCC are *sharing* in any recovery. It is to TXIT and GCC's mutual benefit to pursue the greatest recovery possible for TXIT and, in turn, GCC. Their interests are totally aligned. Accordingly, they are not adverse. Because TXIT and GCC are not adverse, it does not matter which "hat" Mafrige wore when sending or receiving privileged communications. So long as TXIT and GCC—both Andrews Myers's clients— shared a common legal interest, communications between them and Andrews Myers did not operate to waive the attorney–client privilege.

---

[11] Polaris knows this because Sullivan testified that he has "fiduciary authority and capital authority" over *both* TXIT and GCC. Dkt. 497-3 at 24.

### 3.    *TXIT and GCC Share a Common Legal Interest*

Sullivan, the owner of both TXIT and GCC, avers that "GCC and TXIT shared a common interest in fixing the ISBL Facility—and continue to have a shared interest in having the responsible parties (Polaris and the Westchester Fire Insurance Company) pay for the damages incurred." Dkt. 480-10 at 2. Polaris retorts that "TXIT and GCC have no common interest in the outcome of this litigation, other than potentially a financial one" because "TXIT and GCC were adverse throughout the relevant time period." Dkt. 497 at 24. As established above, TXIT and GCC are not adverse. Moreover, Polaris protests (too much) that "TXIT and GCC must have a common ***legal*** interest—not merely a common economic or commercial interest." Dkt. 521 at 4.

In support of the notion that "[a]n economic or commercial interest is not a legal interest," *id.* at 6, Polaris cites *Keranos, LLC v. Analog Devices, Inc.*, No. 2:10-cv-207, 2012 WL 12716356, at *1 (E.D. Tex. Sept. 28, 2012)—a case about federal court subject matter jurisdiction in patent cases under the Declaratory Judgment Act. When the *Keranos* court said that "an economic interest alone is not enough" to qualify as "an adverse *legal* interest," it meant a legal interest *under the Declaratory Judgment Act. Id.* at *3 (citing *Arris Group, Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1374–75 (Fed. Cir. 2011)). To say that *Keranos* is inapposite would be an understatement. Outside the unique context of ascertaining whether "economic injury alone is sufficient to confer standing in patent cases seeking a declaratory judgment," *Arris Grp.*, 639 F.3d at 1374, an economic injury unquestionably confers a legal interest. *See Young Conservatives of Tex. Found. v. Univ. of N. Tex.*, 609 F. Supp. 3d 504, 510 (E.D. Tex. 2022) ("For more than half a century . . . the Supreme Court has repeatedly recognized that financial or economic interests are 'legally protected interests' for purposes of standing." (collecting cases)).

The only other support that Polaris has for why TXIT and GCC do not share a common legal interest is this statement from a magistrate judge's discovery

order, to which all objections were sustained: "The privilege has been recognized in civil cases in which parties have an identical, not similar, legal interest, and not merely a commercial interest." *Power Mosfet Techs. V. Siemens AG*, 206 F.R.D. 422, 424 (E.D. Tex. 2000) (citing *In re Regents of Univ. of Cali.*, 101 F.3d 1386 (Fed. Cir. 1996) (citing *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974))), *objections sustained*, No. 2:99-cv-168, 2001 WL 35986948 (E.D. Tex. July 30, 2001). But tracing this proclamation back to its origins in *Duplan* shows that it is nothing more than *ipse dixit*. *See* 397 F. Supp. at 1172. Moreover, as the district court that sustained the objections to the quoted order observed: "[C]ommunications between two Defendants both highly antagonistic to Plaintiff cannot be said to unravel the protections such communications would otherwise enjoy. Agreements of nondisclosure between the two Defendants affirms this conclusion." *Power Mosfet Techs.*, 2001 WL 35986948, at *1.

In any event, the law that matters here is not federal common law but the law of the state of Texas. *See* FED. R. EVID. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Polaris has not pointed me to any cases applying *Texas* law that take such a stringent view of a common legal interest.[12] Under Texas law, "[j]oint representation is permitted when all clients consent and there is no substantial risk that the lawyer's representation of one client would be materially and adversely affected by the lawyer's duties to the other." *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 50 (Tex. 2012). The evidence discussed above shows that TXIT and GCC consented to joint representation. And because they want the same thing out of

---

[12] Polaris bends over backwards to distinguish the legal interest of "obtaining . . . property through condemnation proceedings" from TXIT's and GCC's interest here. Dkt. 521 at 5 n.6 (citing *In re JDN Real Estate-McKinney L.P.*, 211 S.W.3d 907, 922 (Tex. App.—Dallas 2006, no pet.)). But obtaining property through a condemnation proceeding is not functionally different from TXIT and GCC attempting to obtain Polaris's money through this legal proceeding.

this litigation—and share the same ownership and control—Andrews Myers's representation of one is not adversely affected by its duties to the other.

* * *

For all these reasons, I find that TXIT and GCC share a common legal interest and are joint clients of Andrews Myers such that communications between them does not automatically waive the attorney–client privilege. This ruling should not, however, be construed as a ruling that all the documents on TXIT/GCC's privilege log are necessarily privileged. Rather, this ruling simply restricts Polaris from seeking to compel production of communications between TXIT, GCC, and Andrews Myers solely on the basis that such communications categorically waive the attorney–client privilege. Polaris may have other reasons for objecting to various entries on TXIT/GCC's privilege log, and Polaris is free to bring those issues to the court if the parties cannot resolve the matter in good faith.

### 4.    *TXIT/GCC's Privilege Log*

In his supplementary affidavit, Mafrige swears that all "communications between TXIT, GCC, and Andrews Myers representatives during this litigation[] were intended to be confidential and privileged at the time of the communication," and that "every document on the privilege log that show[s] an exchange between TXIT, GCC, and Andrews Myers is confidential and privileged because Andrews Myers was counsel for both TXIT and GCC, as joint clients, in this litigation." Dkt. 480-11 at 4. He goes on to identify various attorneys and paralegals from Andrews Myers, in-house attorneys for TXIT and GCC, and TXIT and GCC personnel who engaged in these privileged communications. *See id.* at 5. This constitutes a prima facie showing of privilege as to communications between the individuals identified by name in Mafrige's affidavit, which necessitates in camera inspection. *See In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 223 ("[I]f a party asserting privilege claims makes a prima facie showing of privilege and tenders documents to the trial court, the trial court must conduct an in camera inspection of those documents before deciding to compel production.").

20

That said, I am not going to needlessly review tranches of documents if the sole basis for compelling their production is that the privilege is waived for communications between TXIT, GCC, and Andrews Myers. Of course, Polaris is free to challenge any communication that TXIT or GCC withhold over privilege assertions that includes an individual whose name and role was not specifically identified by Mafrige in his affidavit. Polaris is also free to rebut this presumption as to each individual identified, recognizing that "[c]ommunication between employees and the corporation's attorney is privileged [only] if it is made 'at the direction of corporate superiors in order to secure legal advice from counsel' concerning 'matters within the scope of the employees' corporate duties.'" *Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) (quoting *Upjohn*, 449 U.S. at 394). Or Polaris may advance some other challenge not contemplated here (*e.g.*, that the communication was not made for the purpose of giving or receiving legal advice).

The only thing I definitively resolve today is that (1) TXIT and GCC are joint clients of Andrews Myers; (2) Mafrige is TXIT's client's representative; (3) communications between TXIT, GCC, and Andrews Myers are presumptively privileged; and (4) TXIT and GCC have made a prima facie showing that the documents on their privilege log are privileged, meaning any documents challenged after this Order must be reviewed in camera.

### 5.   *The Crouthamel Documents*

In addition to the categorical communications referenced above, Polaris also sought to compel three documents between Crouthamel, TXIT, and Andrews Myers as not privileged: PRIV_006380, PRIV_006379, and PRIV_006267. My earlier ruling as to PRIV_006267 stands—this document is not protected by the attorney–client privilege or work product doctrine and must be produced. *See* Dkt. 472 at 16.[13] As for the other two documents, Polaris's only contention for why TXIT

---

[13] TXIT does not challenge this ruling in its Motion for Reconsideration.

still has not shown that these documents are privileged is that "neither portion of the testimony identifies which entity Mr. [Cameron] Ellis represented at the time of the exchange." Dkt. 497 at 33. For the reasons discussed above, that is not relevant because TXIT and GCC were joint clients and these communications are presumptively protected by the attorney–client privilege. Accordingly, PRIV_006380 and PRIV_006379 need not be produced absent some other argument as to why the privilege has been waived.

## CONCLUSION

For the reasons stated above, I **GRANT** TXIT and GCC's Motion for Reconsideration (Dkt. 480); **DENY** Polaris's Motion to Strike (Dkt. 483); and **GRANT** in part and **DENY** in part Polaris's Motion to Compel (Dkt. 377).[14]

Any future privilege challenges must be accompanied by an annotated privilege log that clearly identifies: (1) each document at issue, (2) the withholding party's basis for asserting the privilege as to each document, and (3) the requesting party's basis for challenging each privilege designation.

SIGNED this 26th day of October 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[14] I am not withdrawing the Privilege Order because it was correct when issued. As noted above, my ruling as to PRIV_006267 stands and this document must be produced. Additionally, the Privilege Order dealt with an unrelated privilege dispute over some Polaris documents that is unaffected by this Order. *See* Dkt. 472 at 16–18.